Stanley M. NEUDER, Plaintiff,

v.

**BATTELLE PACIFIC NORTHWEST NATIONAL LABORATORY,**
Defendant.

No. Civ.A. 99–232(RMU).

United States District Court,
District of Columbia.

March 9, 2000.

Kator, Scott & Heller, Washington, DC, for Plaintiff.

Battelle Pacific Northwest, Richland, WA, pro se.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING IN PART DEFENDANT'S MOTION FOR RE-
CONSIDERATION; RETURNING DOCUMENT
NUMBER 524 TO THE MAGISTRATE JUDGE
FOR HIS REVIEW

### I. INTRODUCTION

This matter comes before the court upon the parties' separate motions to reconsider discovery decisions rendered by the Honorable Alan Kay, United States Magistrate Judge. The magistrate judge's decision arose in connection with a discovery dispute occasioned by Battelle Pacific Northwest National Laboratory's ("Battelle's") refusal to produce documents based on a claim of attorney-client privilege. Battelle submitted to the magistrate judge for *in camera* inspection (1) the disputed documents and (2) a log summarizing their contents and the grounds for asserting the privilege as to each document. After reviewing the documents, the magistrate judge ruled that Document Numbers 395, 400, 554 (in part), 582, 751 and 784 are protected by the attorney-client privilege. *See* Mag. J.'s Memo. Order dated Dec. 1, 1999 (Memo. Order) at 1. As a corollary, the Memorandum Order provides that the remaining documents are not privileged and, consequently, that the plaintiff, Stanley Neuder ("Mr. Neuder"), is entitled to have them produced in discovery. The Memorandum Order further ordered that the notes of Linda Wyrick be produced for *in camera* inspection. Mr. Neuder then lodged his motion for reconsideration of the magistrate judge's decision that portions of the notes were privileged.

Following the magistrate judge's determinations, both Battelle and Mr. Neuder moved for reconsideration pursuant to Local Rule 72.2 and Federal Rule 72(a). For the reasons set forth below, the court affirms the magistrate judge's decision as to all documents save Document Number 524. Document Number 524 will be returned to the magistrate judge for his review and articulated reasons in support of his ruling.

### II. BACKGROUND

Stanley Neuder was employed as a Senior Scientist and Engineer for nearly nine years before his employment was terminated. Mr. Neuder alleges that Battelle wrongfully terminated him and engaged in discriminatory and retaliatory conduct on the basis of his age and disability. Mr. Neuder further alleges that Battelle interfered with his ERISA benefits and retaliated against him for taking sick leave (*See* Def.'s Mot. to Reconsider, Ex. 1.) Battelle responds by asserting that Mr. Neuder was terminated because he failed to comply with Battelle's policies, specifically by: (1) failing to complete time sheets on a daily basis, (2) excessively using sick leave and (3) failing to complete an ethics training course. (*See id.*)

By Battelle's account, the decision to terminate the plaintiff was made by its Personnel Action Review Committee ("PARC"). (*See* Def.'s Mot. to Reconsider, Ex. C.) The events that led to Mr. Neuder's termination are as follows. First, in November 1997, William Farris, the plaintiff's immediate supervisor, issued the plaintiff a written warning concerning alleged recurrent performance-related shortcomings. (*See id.*) Second, Mr. Farris conferred with a Human Resources Manager, Ms. Lamberson, to devise a plan for taking appropriate action against Mr. Neuder. (*See id.*) Third, Mr. Farris and Ms. Lamberson requested that the PARC convene to address what personnel actions, if any, should be taken against Mr. Neuder. (*See id.*)

On June 5, 1998, Battelle convened the first PARC meeting. (*See id.*) David Maestas, Battelle's Senior Attorney, attended this meeting. (*See id.*) Indeed, David Maestas was a member of the PARC committee according to its bylaws. (*See* Opp'n to Def.'s Mot. to Reconsider. Ex. 7.) After meeting, the PARC committee decided to obtain an Independent Medical Examination ("the IME") and to suspend the plaintiff. (*See id.*) Once Battelle received the IME, it convened a second PARC meeting on June 26, 1998. (*See id.*) Mr. Maestas again attended, as did other members of the PARC committee. (*See id.*) At the second meeting, the PARC decided to terminate the plaintiff's employ-

ment. (*See id.*) The plaintiff, accordingly, was terminated by decision of the PARC effective June 30, 1998. (*See id.*)

### III. LEGAL STANDARD

■ A party may invoke Federal Rule 72(a) and Local Rule 72.2 to seek reconsideration of a magistrate judge's determination in a discovery dispute. *See* FED. R. CIV. P. 72(a); L.Cv.R. 72.2. On review, the magistrate judge's decision is entitled to great deference and will be upheld unless found to be "clearly erroneous or contrary to law." *See Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 11 (D.D.C.1998); *Evans v. Atwood,* 1999 WL 1032811, *1 (D.D.C. Sept. 29, 1999). In view of this standard, the court will affirm the magistrate judge's determination unless "on the entire evidence" the court "is left with the definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.,* 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Arakelian v. National Western Life Ins. Co.,* 126 F.R.D. 1, 2 (D.D.C.1989); *Evans,* 1999 WL 1032811 at *1.

### IV. DISCUSSION

#### A. Attorney–Client Privilege

■ "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "Communications from attorney to client are shielded if they rest on confidential information obtained from the client." *In re Sealed Case,* 737 F.2d 94, 98 (C.A.D.C.1984). As a corollary, however, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *See id.* The Supreme Court has characterized the privilege's purpose as follows: "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn,* 449 U.S. at 389, 101 S.Ct. 677. In assessing the contours of the privilege, the magistrate judge stated that the privilege applies only if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*See* Memo. Order at 4 (citing *In re Sealed Case,* 737 F.2d at 98–99 (citing cases)).

#### 1. Magistrate Judge Correctly Applied the Law

■ The magistrate judge correctly recited the standards of law governing this dispute in the Memorandum Order that forms the basis for this court's review. *See generally* Memo. Order at 5–6. To recapitulate, the attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor." *See generally* Memo Order at 5–7; *Marten v. Yellow Freight System, Inc.,* 1998 WL 13244, *7 (D.Kan. Jan. 6, 1998). Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected. *See* Memo. Order at 5 (citing *Coleman v. ABC,* 106 F.R.D. 201, 206 (D.D.C.1985)); *see also ABB Kent–Taylor v. Stallings and Co., Inc.,* 172 F.R.D. 53, 55 (W.D.N.Y.1996) ("[o]ften intertwined with legal advice as to substantive issues is counsel's strategic assessment of alternative choices of action available to the client."). Relatedly, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged." *See Great Plains,* 150 F.R.D. at 197. In other words, "when the legal advice is merely incidental to business advice, the privilege does not apply." *Id.*

Faced with a situation where a party potentially used in-house counsel to cloak otherwise unprivileged business advice; the magistrate judge applied well-settled principles of law. As a threshold matter, the attorney-client privilege applies to "in-house" counsel just as it would to any other attorney. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1974). The magistrate judge correctly cautioned the parties that "a corporate client should not be allowed to conceal a fact by disclosing it to the corporate attorney." *See* Memo. Order at 5 (citing *SEC v. Gulf & Western Indus.,* 518 F.Supp. 675, 681–82 (D.D.C.1981)). Indeed, the mere fact that in-house counsel is present at a meeting does not shield otherwise unprivileged communications from disclosure. *See Great Plains Mutual Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 197 (D.Kan.1993).

Moreover, the magistrate judge correctly determined that the analysis in *Marten v. Yellow Freight* pertains to the facts of this case. *See* Memo. Order at 5. *Marten* provides:

> [T]he mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged. *The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice,* and that the communication was intended to be and was kept confidential. To be privileged, the communication must relate to the business or transaction for which the attorney has been retained or consulted.

*See Marten,* 1998 WL 13244 at *7 (citing *Hinsdale v. City of Liberal,* 961 F.Supp. 1490, 1494 (D.Kan.1997)) (emphasis added).

Based on the foregoing, the court turns to consider Battelle's objections, which are premised upon its assertion that communications made during the PARC meetings are privileged because Mr. Maestas was acting as a legal advisor.

### 2. Magistrate Judge Concludes that PARC Functioned to Make Business Decision

Battelle argues that the primary purpose of the PARC meetings was to render legal advice. (*See* Def.'s Mot. to Reconsider, Ex. C). Battelle implies that because the PARC's purpose was predominantly legal, in-house counsel Maestas' advice was necessarily legal. (*See* Def.'s Mot. to Reconsider at 3). Informed by the analysis in *Marten,* the magistrate judge found that the PARC's primary purpose was to render a business decision and, accordingly, that Mr. Maestas' presence did not make all documents generated and distributed in connection with the PARC privileged. *See* Memo. Order at 6.

In *Marten,* where a similar personnel action was contemplated by a similar personnel review committee, this one called the Employee Review Committee (ERC), the court found that the primary function of the ERC was to determine appropriate employment action to take against an employee. *See id.* The *Marten* court held that "[w]hen a committee inquires about the legal implications of a proposed decision to terminate an employee, the business purpose of the decision predominates over the legal issues discussed". *Id.* at *8. *Marten* reasoned that when a meeting is required in order to determine the legal implications of an employment action, legal advice sought or received is incidental to considerations of what is most prudent for the successful operation of the business. *See id.* The court, accordingly, held that the business purpose of the ERC decision to terminate the *Marten* plaintiff predominated over the legal issues.

In this case, the magistrate judge determined that the PARC committee's primary function was to terminate Mr. Neuder. (*See* Opp'n to Def.'s Mot. to Reconsider, Ex. 7.) As in *Marten,* although legal review was one purpose for the meeting, it was merely incidental to the primary business function. *See Marten,* 1998 WL 13244 at *8. The record in this case similarly supports the conclusion

that the PARC served predominantly a business purpose—terminating the plaintiff. First, Battelle's Disciplinary Policy provides that the PARC is called to review and concur in termination decisions[1] and to approve proposed terminations.[2] *See* Memo. Order at 7. Second, the Memorandum Order references the depositions of Mr. William Farris and Ms. Marilyn Merryman in support of the conclusion that the PARC functioned primarily in a business capacity. These depositions reveal that the PARC functioned to terminate Mr. Neuder.[3] And finally, the termination letter sent to the plaintiff ("the Farris letter") reflects that the PARC terminated the plaintiff. The Farris letter explains:

> The facts of this case were presented to an independent review panel comprised of senior Laboratory management, and the decision of the panel was to terminate your employment.

(*See* Opp'n to Def.'s Mot. to Reconsider, Ex. 3) (termination letter referring to the PARC committee as "the panel"). Thus the record in this case supports the magistrate judge's determination that the PARC served a business purpose, i.e., to terminate the plaintiff.

### 3. Attorney Participates Predominantly as Business Actor in PARC Meetings

It happens to be that in *Marten,* the in-house attorney was a voting member of the ERC committee. The court remarked that "[m]ere membership on a committee does not of itself necessitate a finding that counsel was not acting as an attorney." *See Marten,*

1998 WL 13244 at *9. The court added, "[m]embership on a committee which decides if an employee should be terminated, however, may lead to an inference that the attorney, at least in part, was acting in a non-legal capacity." *Id.* "When an attorney is a voting member, the indication is even stronger." *Id.*

This court concurs in the magistrate judge's determination that Mr. Maestas's non-voting status is not a significant, distinguishing factor that would make *Marten* inapposite to this case. *See* Memo. Order at 6. Rather, the record contains other affirmative indicators that Mr. Maestas was acting in a non-legal capacity as a PARC member. It is notable, for example, that Battelle's Disciplinary Policy requires an attorney to sit on the PARC committee. (*See* Opp'n to Def. Mot. to Reconsider, Ex. 7.) Moreover, the attorney serves as the chairperson of the PARC committee in the event that a proposed termination involves a Human Resources staff member. (*See id.*)

The court, accordingly, agrees that Mr. Maestas' self-serving declaration does not suffice to establish that he was acting in a legal capacity as a PARC member. *See* Memo. Order at 7. Indeed, his statement is contradicted by the express provisions of Battelle's internal documents referenced above. (*See, e.g.,* Opp'n to Def.'s Mot. to Reconsider, Exs. 3, 7, 9 and 13.) Based on a review of the magistrate judge's consideration of the authorities and record in this case, the court agrees that Mr. Maestas, a PARC committee member, acted predominantly in a non-legal capacity.

1. Battelle's Disciplinary Policy provides: "Termination of a non-bargaining unit staff member's employment first requires documentation of the situation and a recommendation to terminate by the staff member's line management with approval by the Level 1 manager. The termination decision is then reviewed by the Personnel Action Review Committee (PARC) as discussed below." (Opp'n to Def.'s Mot. to Reconsider, Ex. 7.)

2. Battelle's Disciplinary Policy provides: "The PARC is chaired by the Director of Human Resources, or their delegate, and includes the cognizant HRM representative from the EEO Office, the PARC Administrator, Legal counsel, and one other Level 1 manager. The cognizant Level 1 manager also attends the PARC meeting, their delegate may attend if the cognizant Level 2 is

out of the Laboratory. The Level 1 must concur with the decision of the PARC prior to any termination action being delivered. If the termination involves a Human Resources staff member, the Director of Legal and Contracts serves as the chair of the PARC." (Opp'n to Def.'s Mot. to Reconsider, Ex. 7.)

3. Mr. Farris stated in his deposition that the PARC was the decision-making body that terminated Mr. Neuder. (*See* Opp'n to Def.'s Mot. to Reconsider. Ex. 13.) Ms. Merryman stated in her deposition that the PARC "essentially gives their thumbs up or thumbs down on recommendations" of the Human Resource Manager. (*See* Opp'n to Def.'s Mot. to Reconsider, Ex. 9.) *See* Memo. Order at 7.

#### 4. Attorney Serving in Predominantly Non–Legal Capacity Must Make Clear Showing that Advice was Given in Legal Capacity

The magistrate judge correctly ruled that Battelle bears the burden of demonstrating that in-house counsel was on the PARC to provide legal, rather than business advice. *See* Memo. Order at 5. "A party asserting the [attorney-client] privilege has the burden of showing that the communications in question were intended to be kept confidential." *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F.Supp. 491, 511 (D.N.H.1996). "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.*

"When an attorney serves in a non-legal capacity . . . his advice is privileged upon a clear showing that he gave it in a professional legal capacity." *Marten*, 1998 WL 13244 at *9. In cases that involve in-house counsel, it is necessary to apply the privilege cautiously and narrowly "lest the mere participation of an attorney be used to seal off disclosure." *See id.* "Furthermore, documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice." *Pacamor Bearings*, 918 F.Supp. at 511.

#### 5. Magistrate Judge Examines the Facts of the Communication

In order to determine whether the attorney was acting in a professional legal capacity, the magistrate judge closely examined the facts of the specific communication and determined:

the documents listed in Defendant's privilege log contain statements of facts that were provided to the PARC in order to make a personnel decision as to Plaintiff. There is nothing in the record to suggest that the documents were given to Mr. Maestas for the express or sole purpose of receiving legal advice and not in his capacity as a participant in the PARC. . . . Similarly, there is nothing in the privilege log or in the documents themselves to suggest that these documents were provided to Maestas to form the basis of a legal opinion.

*See* Memo. Order at 8 (internal citations omitted). Based on a review of the magistrate judge's memorandum order, including factual findings and review of the law, the court is convinced that Documents Numbers 395, 400, 554 (in part), 582, 751, 784 and parts of Document Number 942 are privileged. Moreover, the magistrate judge correctly held that the remaining documents, save Document Number 524, are not privileged. Document Number 524 will be returned to the magistrate judge for his review and articulated reasons in support of his ruling.[4]

#### (i) Privileged documents

The magistrate judge's determinations regarding the privileged nature of Document Numbers 395, 400 and 784 are affirmed for the reasons that follow. The Log states: "The communication is marked 'confidential and privileged attorney client communication' and contains legal advice." (Log at 2.) The recitation of the phrase "confidential and privileged attorney-client communication" is not dispositive in determining whether a document is privileged. *See In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 523 (N.D.Ill.1990). These documents, however, do reflect that Mr. Maestas provided legal advice in a professional legal capacity. It is clear from their contents that Mr. Maestas was sent

---

4. This court has determined that the record reasonably supports sustaining the privilege for Document No. 524. However, because the magistrate judge has not articulated his reasons for denying the privilege as to that document, the court is unable to determine whether his determination is clearly erroneous and otherwise contrary to law. Therefore, this document is remanded to the magistrate judge for articulation of the reasons for denying the privilege. *See Sedlacek v. Morgan Whitney Trading Group*, 795 F.Supp. 329, 331 (C.D.Cal.1992) (remanding to the magistrate judge for further consideration because the magistrate judge's Order did "not indicate what he considered when making his ruling or why he rejected plaintiff's arguments.").

these documents in order to provide legal advice and that he provided that advice in a professional legal capacity.

■ The court also agrees that Document Number 554 is privileged in part. The Log states: "The draft reflects legal advice from Mr. Maestas." (Log at 4.) The magistrate judge was rightfully persuaded that the Log reflects the contents of privileged communication in the form of attorney notes. Comments made by an attorney on a draft document are privileged when the attorney is acting in a professional legal capacity. *See In re Air Crash Disaster*, 133 F.R.D. at 525 (holding that handwritten comments by in-house counsel on a draft of a memorandum are privileged). Accordingly, the court agrees that the defendant may redact any attorney notes from Document 554 and produce the remaining portions of the document.

Likewise, the court agrees that Document Number 582 is privileged. The Log states: "Notes prepared by Mr. Farris in order to seek legal advise from Mr. Maestas." It is reasonable to conclude that these notes were prepared to seek legal advice. The date on the notes reflects that they were written after the PARC meetings, and therefore, it is unlikely that they were prepared in anticipation of the meetings. The court, accordingly, concurs in the magistrate judge's determination that Document Number 582 is privileged.

Finally, the court agrees that Document 751 is privileged: The Log states: "Ms. Lamberson is specifically requesting legal advice from Mr. Maestas." (Log at 5.) The magistrate judge could have concluded that the document was prepared for legal comment and, therefore, is privileged. *See In re Air Crash Disaster*, 133 F.R.D. at 524 (holding that a document prepared for both non-legal and legal comment is not subject to the attorney-client privilege). Accordingly, the court does not detect error in this assessment.

### (ii) Linda Wyrick's notes

After directing the parties to submit Ms. Wyrick's notes without redactions for *in camera* review, i.e. Document Number 942, the magistrate judge ruled that a portion of the notes were privileged communication between Ms. Wyrick and Mr. Maestas. The court agrees that Document Number 942 is privileged in part. Document 942 contains Ms. Wyrick's notes regarding Mr. Neuder's complaints of discrimination generally. A portion of the document. however, memorializes a conversation between Ms. Wyrick and Mr. Maestas. *See* Document 942 at 6. Although Mr. Maestas was a member of the PARC committee, the magistrate judge could have determined that he was acting in a professional legal capacity when advising Ms. Wyrick on the legal issues relevant to Mr. Neuder's discrimination claim. Therefore, the court agrees that the portions of the notes that memorialize communications between Ms. Wyrick and Mr. Maestas are privileged. The court will order that the privileged portions be redacted before production.

### (iii) Documents not privileged

■ The record also supports the conclusion that Document Numbers 368, 369, 389 and 390 are not privileged. The Log states: "This document reflects the discussions and deliberations of the PARC committee during which David Maestas. Battelle's Senior Attorney, obtained information and provided legal advice." (Log at 1.) The fact that the documents reflect communications resulting from the PARC meetings is not alone sufficient to give rise to an attorney-client privilege. The magistrate judge has already determined that the discussions and deliberations of the PARC meetings are not privileged because the PARC's primary function was to make a business decision, not to obtain legal advice. *See In re Air Crash Disaster*, 133 F.R.D. at 522–24 (holding that minutes from a meeting are not privileged when the meeting itself is not covered by the attorney-client privilege). Moreover, the communications do not reflect that Mr. Maestas provided legal advice in a professional capacity.

The court agrees with the conclusion that Document Number 399 is not privileged since Battelle's Log states: "This document was prepared in anticipation of a PARC meeting and includes Mr. Maestas as a recipient for his consideration in providing legal advice and analysis." (Log at 2.) The docu-

ment has not been shown to disclose client confidences and, apart from the bare fact that it was sent to Mr. Maestas, there is no indication that anyone sought legal advice. *See In re Air Crash Disaster*, 133 F.R.D. at 520 ("[t]he fact that a document is sent through an attorney cannot prevent its having to be produced."). The magistrate judge already determined that the PARC committee's primary function was to make a business decision to terminate an employee. Document Number 399 was prepared in anticipation of the PARC meeting, and accordingly, the communication is not privileged. *See In re Air Crash*, 133 F.R.D. at 524 (document prepared for non-legal review is not subject to attorney-client privilege).

The court agrees that Document Numbers 4, 373, 378, 559, 570, 613, 614, 618, 620, 634, 796 and 797 are not privileged, for the same reasons that apply to Document Number 399.

The magistrate judge correctly concluded that Document Number 401 is not privileged. The Log states: "Marked confidential, this is the memo to Mr. Maestas, among others, referred to in No. 400." (Log at 3.) Although this document is marked confidential, it has not been shown to disclose client confidences. Furthermore, it does not appear that Ms. Rodrick sought or received legal advice from Mr. Maestas. *See In re Air Crash Disaster*, 133 F.R.D. at 524 (a statement that legal advice was given is not a sufficient basis for claiming a privilege when the document does not reflect that legal advice was given).

Document Number 408 is not privileged. The Log states: "Mr. Farris is reporting to Mr. Maestas, among others, about his discussions with Dr. Neuder as a follow-up to the PARC meeting and the information is provided in part for Mr. Maestas to consider in providing legal advice and analysis. Mr. Farris is free to testify about his conversation with Dr. Neuder, but the memorandum itself is within the asserted privilege." (Log at 3.) The magistrate judge could have determined that this document does not disclose client confidences. Moreover, Mr. Farris' free reign to testify about the contents of the conversation does not support the inference that Mr. Farris intended the contents of the letter to remain confidential. Furthermore,

there is no indication that Mr. Farris sought legal advice from Mr. Maestas.

Document Numbers 761 and 763 are not privileged. The Log states: "This information was provided to Mr. Maestas, among others, in preparation for the PARC meeting and is privileged as such. Ms. Lamberson is free to testify about the contents of her conversation with Dr. Lewis." (Log at 6.) A document prepared for the PARC meeting is generally not privileged because, as discussed above, the PARC meeting is not privileged. This document does not disclose client confidences and does not reflect that Ms. Lamberson sought legal advice from Mr. Maestas. Furthermore, it does not appear that Ms. Lamberson intended the contents of the letter to remain confidential given that she is free to testify about the conversation.

The court agrees that Document Number 766 is not privileged. The Log states: "[r]efers to the contents of a conversation with Mr. Maestas which was privileged." (Log at 6.) This document does not disclose client confidences. Furthermore, the communication does not reflect that Ms. Merryman sought or received legal advice from Mr. Maestas.

### (iv) Document Returned to the Magistrate Judge

The final document for consideration in this parade of communications is Document Number 524. The magistrate judge did not rule that Document Number 524 was privileged. The Log provides, however, that the document is an undated "communication to Mr. Maestas seeking legal advice and notes relating to that advice on page 2." If the Log accurately reflects the contents of the communication, one might reasonably conclude that the notes were prepared to seek legal advice from Mr. Maestas. Assuming that Ms. Lamberson used these notes to seek legal advice from Mr. Maestas, at least parts of the communication might be privileged. The court, however, has no record of the magistrate judge's reasons to assist in evaluating his ruling as to this document. Accordingly, the court returns Document Number 524 to the magistrate judge for his review

and articulated reasons in support of his ruling.

### B. Waiver

▮ The privileged documents, i.e., Document Numbers 395, 400, 554 (in part), 751, 784 and part of 942, will be protected from discovery so long as the privilege has not been waived. *See Western Trails Inc. v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4, 8 (D.D.C.1991).[5] "A waiver can be expressed or implied." *Id.* "Both inadvertent and deliberate disclosure of privileged communications waives the privilege." *Id.; Harding v. Dana Transport,* 914 F.Supp. 1084, 1092 (D.N.J. 1996). The privilege may be "pierced" and in effect waived, upon a showing that the information sought is needed, relevant, material and incapable of being secured through any less intrusive means. *See Payton v. New Jersey Turnpike Authority,* 292 N.J.Super. 36, 678 A.2d 279, 288 (1996).

▮ The plaintiff cites *Harding* and *Payton* in support of the proposition that Battelle has waived its privilege. The court agrees with the magistrate judge that the plaintiff's waiver argument is not persuasive. *See* Memo. Order at 10. Battelle has not waived the attorney-client privilege, either by selective or partial disclosure. First, the fairness doctrine articulated in *Harding* is triggered only when: (1) a document is disclosed that contains privileged and unprivileged communications, (2) the privileged communications cannot be separated from the non-privileged communications, and (3) the party seeking disclosure cannot obtain the unprivileged information from a less intrusive source. *See Harding,* 914 F.Supp. at 1092. The fairness doctrine is not triggered in this case because Mr. Neuder has not shown that the privileged communications are inseparable from the unprivileged communications.

Second, the circumstances articulated in *Payton* for finding that a party has waived its privilege do not obtain here. In *Payton,*

the New Jersey Supreme Court stated that: "[t]he privilege may be pierced upon a showing of need, relevance and materiality, and the fact that the information could not be secured from any less intrusive source." *Payton,* 678 A.2d at 288. The *Payton* plaintiff was unable to obtain the contents of an investigation by other means because the informants were unlikely to provide the same information to the plaintiff as they had to the defendant. *See id.* In this case, there has been no showing of need, relevance, or materiality that would compel this court to find that Battelle has effected a *Payton* waiver.

### C. Crime–Fraud Exception

▮ "[T]he attorney-client privilege is subject to what is known as the crime-fraud exception." *In re Sealed Case,* 107 F.3d 46, 49 (D.C.Cir.1997). Under the crime-fraud exception, communications between an attorney and his client in furtherance of the commission of a crime or fraud will not be protected from disclosure. *See Coleman v. ABC,* 106 F.R.D. 201, 206 (D.D.C.1985). "Two conditions must be met." *In re Sealed,* 107 F.3d at 49. "First, the client must have made or received the otherwise privileged communications with the intent to further an unlawful or fraudulent act." *Id.* "Second, the client must have carried out the crime or fraud." *Id.* "The burden is on the party seeking to defeat the privilege to make a prima facie showing that the communications were made in furtherance of a crime or fraud." *Coleman,* 106 F.R.D. at 207.

▮ In order to invoke the exception, "more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in the litigation." *See id.* The court agrees with the magistrate judge's determination that the exception does not apply in this case. The plaintiff has failed to demonstrate that Battelle's communications with

---

5. In *Western Trails,* the court held that documents provided to the plaintiff's attorney were privileged. *See* 139 F.R.D. at 8. The privilege was waived, however, when plaintiff discussed these documents in a published report. *See id.* Plaintiff alleged that the report was prepared at the direction and under the supervision of the

attorney for the purpose of assisting him in rendering legal advice. *See id.* The privilege was nevertheless waived because even "an inadvertent disclosure of the confidential communication from the client to the attorney is a waiver of the privilege." *Id.* at 11 (citing *In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989)).

Mr. Maestas were made in furtherance of a crime or fraud.

## V. CONCLUSION

For the foregoing reasons, the court affirms the magistrate judge's determination with respect to Document Numbers 4, 368, 369, 373, 378, 389, 390, 399, 401, 408, 554,[6] 559, 570, 613, 614, 618, 620, 634, 751, 761, 763, 766, 796, 797 and 942.[7] The defendant shall furnish copies of these documents to the plaintiff forthwith. The court also affirms the magistrate judge's determination that Document Numbers 395, 400, 582, 751 and 784 are privileged and, accordingly, Battelle need not produce these documents to the plaintiff in discovery. Finally, the court will return Document Number 524 to the magistrate judge for his review and articulated reasons in support of his ruling.

---

6. The parts of Document Number 554 that reflect attorney's notes shall be redacted.

7. The parts of Document Number 942 that memorialize communications between Ms. Wyrick and Mr. Maestas shall be redacted.