Robbi Lynn JANICKER, an infant By her mother and natural guardian, Lynn JANICKER, Plaintiff,

v.

GEORGE WASHINGTON UNIVERSITY, Washington, D.C., Defendant.

Civ. A. No. 80–1550.

United States District Court, District of Columbia.

June 29, 1982.

David M. Schuller, Richard Frank, P.C., New York City, Brian M. Phelan, O'Connor & Hannan, Washington, D. C., for plaintiff.

Brien A. Roche, Doherty, Sheridan & Grimaldi, Fairfax, Va., for defendant.

## MEMORANDUM OPINION and ORDER

ARTHUR L. BURNETT, Magistrate.

The Magistrate has given full consideration to the motion of the plaintiff to compel disclosure, filed April 23, 1982, to the oral argument presented by counsel at a hearing on April 29, 1982, to the formal written opposition of the defendant to the plaintiff's motion to compel, filed May 10, 1982, and has reviewed the entire court file and relevant judicial precedent.

Plaintiff in seeking to compel production of investigative reports pursuant to her interrogatories numbers 17–21 has urged that the response to interrogatory No. 17 is incomplete in suggesting that the only investigative reports were those of the D.C. Fire Department and the D.C. Arson Squad concerning the fire which occurred about 3:30 a. m. on April 19, 1979 at the Mabel Thurston Hall, George Washington University, here in the District of Columbia. Plaintiff has referred particularly to the deposition testimony of Mr. Charles E. Diehl of May 4, 1981 to the effect that an investigation was conducted under his jurisdiction as vice-president and treasurer of the University, that a committee consisting of University personnel was appointed to conduct the investigation, and that he asked the committee to study the "causes of the fire as far as they could determine," to tell him whether the University had any violations of the building code or other regulations, and to give him "their thoughts on what steps, if any, we could take to prevent or moderate such happening again." Plaintiff's counsel, based on this testimony, has contended that clearly, this investigation was performed by the defendant at its own behest in the course of the business of operating a University and not as a part of the attorney's work product or for the primary purpose of preparing for litigation. Plaintiff's counsel further urged that the defendant should thus be directed to answer the interrogatories, to provide inspection of all of the documents and photographs generated in that investigation, together with all statements of defendant's own employees as well as statements of other witnesses, and to identify with particularity such other investigative documents as may exist and to submit them to the court for an *in camera* inspection for purposes of a ruling.

In its opposition of May 10, 1982 the defendant asserts that interrogatories numbers 17–21 and plaintiff's motion to compel call for investigative reports falling into essentially four (4) categories:

1. The report prepared by the committee referred to by Mr. Diehl in his deposition.

2. The investigative report issued by the security office of the George Washington University along with statements of security officers and some students.

3. The investigative file of the Hartford Insurance Company.

4. The investigative material generated or produced by counsel or his representatives since the institution of suit.

As to the investigation ordered by Mr. Diehl, counsel for the defendant has argued that within a day or two of the Thurston Hall fire, a private investigator representing either individual student(s) or their attorney(s) was on campus interviewing people and investigating the fire, and this fact, along with the obvious liability implications of the fire, made Mr. Diehl very much conscious of the possibility of litigation arising from the fire. Defendant urges that since all of these documents were prepared "with an eye towards possible litigation" the plaintiff must show a substantial need for

the documents and an inability to obtain their substantial equivalent by other means. Defendant asserts plaintiff has not made such a showing since both D.C. Fire Department and the D.C. Police Department investigative reports have been made available to plaintiff's counsel and they also have access to depositions of a number of witnesses in the D.C. Superior Court case of *Soos v. George Washington University*, C.A. No. 11117–79, arising out of the same fire. The defendant has made the same argument in connection with the investigative material of the George Washington University Security Office, observing that Mr. Harry Geiglein, the Director of Security, prepared a report dated May 10, 1979 with a supplement dated July 25, 1979. Counsel further noted that Mr. Geiglein was deposed at some length in the Superior Court action and his knowledge of the circumstances of the fire and the University's response to it was explored in some detail there. Defendant's counsel concludes that the plaintiff's counsel has this deposition or has access to it and therefore can demonstrate no need for the investigative report to be produced.

▮▮▮ The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible in civil pretrial discovery. As stated in *Soeder v. General Dynamics Corporation*, 90 F.R.D. 253 (D.Nev.1980) the distinction between whether defendant's "in house" report was prepared in the ordinary course of business or was "work product" in anticipation of litigation is an important one. 90 F.R.D. at 255. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an "in house" report as work product. In *Soeder, supra*, the Magistrate there observed:

> "The fact that Defendant anticipates the contingency of litigation following a crash of one of its aircraft does not automatically qualify Defendant's 'in house'

report as work product. Certainly litigation is a contingency to be recognized by any aircraft accident. However, given the equally reasonable desire of Defendant to improve its aircraft products, to protect future pilots and passengers of its aircraft, to guard against adverse publicity in connection with such aircraft crashes, and to promote its own economic interests by improving its prospect for future contracts for production of said aircraft, it can hardly be said that Defendant's 'in house' report is not prepared in the ordinary course of business." 90 F.R.D. at 255.

A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business. Some recent cases have suggested the need for objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report before the work product doctrine becomes applicable. See, *e.g., Fine v. Bellefonte Underwriters Insurance Co.*, 91 F.R.D. 420 (S.D.N.Y. 1981); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115 (N.D. Ga.1972). While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation. Cf. *In Re International Systems and Controls Corporation Securities Litigation*, 91 F.R.D. 552, 557 (S.D.Texas 1981).

▮▮▮ Applying the foregoing precedent to the facts in the discovery dispute in this case, it appears that the committee report which resulted from Mr. Diehl's direction and the investigative report issued by the security office of the George Washington University were more internal reports prepared in the ordinary course of business with the primary motivation being to determine what steps could be taken to prevent any repetition of such a tragedy to protect other resident college students and the University's standing in the college community and in recruiting students to attend the institution in the future. At that early

stage it does not appear that such efforts were at the direction of counsel or after a firm resolve to litigate any civil liability claim which would arise out of the fire of April 19, 1979. Accordingly, it appears that the report prepared by the committee pursuant to the direction of Mr. Diehl and the investigative report of the security office are producible and discoverable under Rule 26(b)(1) and are not work product under Rule 26(b)(3). However, the investigative file of the Hartford Insurance Company would appear to have been prepared in anticipation of claims, which if denied, would have clearly led to suits and litigation. Finally, investigative material generated or produced by counsel or his representatives after the filing of this law suit is obviously work product and is not discoverable.

Based on the foregoing analysis, it is hereby this 29th day of June, 1982 ORDERED that the defendant George Washington University within ten (10) days of this Order answer further the interrogatories numbers 17–21 with reference to the investigation directed by Mr. Diehl resulting in the committee report and with reference to the investigative report issued by the Security Office of George Washington University and produce copies of said reports along with the statements taken in the course thereof from security officers and students, provided however, that the defendant may redact any conclusions or recommendations from such investigative reports, and thus producing only those portions of the reports setting forth factual information developed in the course of the investigations. In all other respects, plaintiff's motion to compel is DENIED.