**WESTERN TRAILS, INC., Plaintiff,**

v.

**CAMP COAST TO COAST, INC., Defendant.**

**Civ. A. No. 90–2063 (HHG/PJA).**

United States District Court, District of Columbia.

Oct. 3, 1991.

Charles R. Claxton, Goldstein & Claxton, Washington, D.C., for plaintiff.

Theresa Fenelon and Stanley Gorinson, Pillsbury, Madison & Sutro, Washington, D.C., for defendant.

## MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate Judge.

This is an action brought by Western Trails, Inc., the owner of a private campground resort, against Camp Coast to Coast, Inc., a corporation that arranges reciprocal visitation privileges for individual members of licensed campground resorts such as Western Trails. For an annual fee plus use fees paid to Coast to Coast for each night stayed at another resort, members of a licensed resort who have also purchased a Coast to Coast membership may visit other private resorts that are affiliated with Coast to Coast. This action arose after Coast to Coast promulgated a rule, known as the Primary Product Rule, governing the sale of Coast to Coast memberships by affiliated resorts.

The Primary Product Rule provides that no licensed resort shall offer Coast to Coast memberships to any person living greater than 250 miles from the resort for so long as (1) greater than 60% of the members of the resort live outside a radius of 250 miles from the resort and (2) during the preceding 12 months, the members of the resort visited other licensed resorts more than the resort hosted visiting members of other licensed resorts.

Western Trails alleges that Coast to Coast designed the rule in conspiracy with other licensed resorts in order to restrict price competition in the sale of resort memberships. Plaintiff's Memorandum in Support of Motion to Compel at 6–7. Western Trails contends that Coast to Coast deliberately formulated the rule to discriminate against low-priced resorts. Plaintiff's Memorandum in Support of Motion to Compel at 19. Coast to Coast answers that the rule was designed to prevent "free rider" situations in which a resort sells memberships to purchasers who live great distances from the resort and who have no intention of regularly using the resort, but who purchase the membership in the resort as a means to gaining inexpensive access to other licensed resorts in the Coast to Coast network. Opposition of Defendant at 5.

Western Trails seeks production of documents relating to the development, formulation and application of the Primary Product Rule. Western Trails seeks these documents in order to prove that the rule was designed to discriminate against resorts that offer resort memberships for relatively low prices. Coast to Coast has refused to produce some of these documents on the grounds that the documents are protected under the attorney-client privilege and the work product doctrine.[1]

---

1. Coast to Coast has submitted over 470 pages of documents for *in camera* review. The documents are labeled CCC 393 PRIV 0001—CCC 393 PRIV 0472 (except that documents numbered 0121, 0210 and 0327 were not submitted) and CCC 393 PO 00077—CCC 393 PO 00102. Some of these documents do not appear to relate to the development, formulation or application of the Primary Product Rule, but Coast to Coast has asserted the attorney-client privilege

Western Trails has argued on three grounds that the documents withheld by Coast to Coast are not privileged. First, Western Trails argues that documents that were compiled and relied upon in drafting the Primary Product Rule are discoverable because the adoption of the rule was a business decision. Plaintiff's Memorandum in Support of Motion to Compel at 18. Western Trails contends that documents pertaining to the operation of the rule upon the resorts is discoverable because the data contained in these documents is compiled in the ordinary course of Coast to Coast's business. Western Trails also claims that Coast to Coast collects this data in order to administer its "Net Hosting Program," in which it compensates resorts that host visitors from other resorts for more nights than members of the resort visit other resorts. *Id.* at 20.

Second, Western Trails argues that the data in these documents was not confidential because Coast to Coast intended to and did disclose the results of its calculations to licensed resorts. *Id.* at 21–22.

Third, Western Trails argues that Coast to Coast has waived the attorney client privilege with respect to all documents relating to the Primary Product Rule because a document known as the 1989 CACI report was inadvertently produced to Western Trails. Supplemental Memorandum in Support of Plaintiff's Motion to Compel at 2–3. The CACI report is a tabulation of the percentage of members of each licensed resort who live inside and outside of a radius of 250 miles from the resort. *Id.* at 3 and Exhibit A.

In opposition to Western Trails' motion to compel production of documents, Coast to Coast responds that the documents requested were either prepared by, or requested by and prepared for Coast to Coast's outside general counsel, Harold Berliner, while he was "developing and opining on the legality of the ... Primary Product Rule." Opposition of Defendant to Plaintiff's Motion to Compel at 15. Coast to Coast asserts the attorney-client privilege maintaining that Berliner was "acting as a lawyer and not as a businessman." *Id.* at 16.

In response to Western Trails' argument that the privilege was waived by production of the CACI report, Coast to Coast contends, first, that the CACI report was privileged. Coast to Coast "does not contend that the raw data in its files (the names and addresses of CCC's approximately 350,000 members) are privileged," rather Coast to Coast argues that the report is privileged because it was prepared for Coast to Coast at the request of Berliner "for the purpose of assisting him in rendering legal advice." Opposition of Defendant to Plaintiff's Supplemental Memorandum at 5. Second, Coast to Coast argues that production of the CACI report was an inadvertent production of one document out of several thousand documents; therefore, it was not a waiver of the privilege. *Id.* at 6–8. Alternatively, Coast to Coast argues that even if the privilege was waived by production of the CACI report, the subject of the waiver should be limited to the CACI report itself in consideration of fairness to Coast to Coast and because the subject of the CACI report was not the Primary Product Rule. *Id.* at 12–13.

The Court has inspected *in camera* the documents that Coast to Coast claims to be privileged in order to determine whether Coast to Coast must produce these documents pursuant to Western Trails' motion to compel.

## A. Attorney–Client Privilege

■ The purpose of the attorney-client privilege is to promote complete and candid communication between clients and attorneys in order that attorneys may render informed, sound legal advice. *Upjohn Co.*

or the work product doctrine, or both, with respect to each of the documents. Although Coast to Coast did not argue for protection under the work product doctrine in its Opposition to Plaintiff's Motion to Compel, or in its Opposition to Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion to Compel, Coast to Coast did claim protection under the work product doctrine in the indices to privileged documents submitted for *in camera* inspection on August 1, 1991, August 9, 1991 and August 23, 1991.

*v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege rests on the premise that

> if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be more reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice.

*Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege is an exception, however, to the fundamental principle that discovery should be liberal and broad in furtherance of the search for truth. *E.g., Weil Ceramics & Glass Inc., v. Work*, 110 F.R.D. 500, 504 (E.D.N.Y.1986). Accordingly, the privilege applies only when necessary to promote frank and open attorney-client communications; "it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577.

■ Courts narrowly construe the privilege, therefore, limiting the protection of the privilege to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent. Inc. v. United States Dept. of Air Force*, 566 F.2d 242, 252 (D.C.Cir.1977). A precise summary of the attorney-client privilege is:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom a communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing either (i) an opinion of law or (ii) legal services or (iii) legal assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In Re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)). The party asserting the privilege bears the burden of proving each element of the privilege. *See In re Sealed Case*, 737 F.2d at 99; *S.E.C. v. Gulf & Western Indus., Inc.*, 518 F.Supp. 675, 682 (D.D.C.1981).

■. The attorney-client privilege also protects confidential communications from an attorney to a client, but only if the attorney's communications would reveal confidential client communications. *See In re Sealed Case*, 737 F.2d at 99; *Mead Data Central Inc.*, 566 F.2d at 254. The privilege extends to an attorney's communications to a client in order to protect against disclosure of confidential client communications. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980).

■ Attorney-client communications concerning business matters are not within the attorney-client privilege. *In re Sealed Case*, 737 F.2d at 99; *Gulf & Western Indus.*, 518 F.Supp. at 681; *Coleman v. American Broadcasting Cos.*, 106 F.R.D. 201, 205 (D.D.C.1985). The attorney-client privileged is not lost, however, if business advice is simply incorporated into legal advice of counsel. *Coleman*, 106 F.R.D. at 206.

■ Both inadvertent and deliberate disclosure of privileged communications waives the privilege. *In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989). Even inadvertent disclosure, "short of court-compelled disclosure, or other equally extraordinary circumstances," waives the privilege because this standard

> imposes a self-governing restraint on the freedom with which organizations such as corporations ... label documents related to communications with counsel as privileged. To readily do so creates a greater risk of "inadvertent" disclosure by someone and thereby the danger that the "waiver" will extend to all related matters.... Otherwise, there is a temp-

tation to seek artificially to expand the content of privileged matter. *Id.* Moreover, the waiver extends "to all other communications relating to the same subject matter." *Id.* at 981 (quoting *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir.1982)).

### B. Work Product Doctrine

The attorney work product doctrine protects a "zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C.Cir.1980). The purpose of the doctrine is to protect the integrity of the adversary trial process by shielding adversaries' "thoughts and plans concerning the case." *Id.* (citing *Jordan v. United States*, 591 F.2d 753, 775 (D.C.Cir.1978)).

■ The scope of this doctrine, therefore, is confined to "materials prepared in anticipation of litigation or for trial." *Coastal States Gas Corp.*, 617 F.2d at 864; Fed.R.Civ.P. 26(b)(3).[2] Thus, there is no protection "unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial." *Coastal States Gas Corp.*, 617 F.2d at 864. The work-product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation. *Eckert v. Fitzgerald*, 119 F.R.D. 297, 299 (D.D.C.1988) ("The literal language of [Rule 26(b)(3)] protects material prepared by or for *any* litigation

or trial so long as it was prepared by or for a party to the subsequent litigation") (quoting *Federal Trade Commission v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1988)); *Carey–Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 247 (D.D.C.1986).

■ The privilege does not shield from discovery documents that were "prepared in the regular course of compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation." *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C.1987); *see also* Fed.R.Civ.P. 26(b)(3) advisory committee's note ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this section"). The function that the documents serve and the purpose for which the documents were created, therefore, determine whether the work product doctrine protects documents from discovery by the party's adversary. *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C.Cir.1987); *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982).

### C. Analysis

The documents submitted for *in camera* inspection pursuant to the Court's order of August 1, 1991[3] have been divided into separate categories in order to discuss specific issues raised in applying elements of the attorney-client privilege and the work product doctrine to the documents within

---

**2.** Federal Rule of Civil Procedure 26(b)(3) provides:

[A] party may obtain discovery of documents ... otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the

mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**3.** Coast to Coast submitted to the Court documents numbered 001 through 122 at the hearing on Western Trail's motion to compel on August 1, 1991. Pursuant to the Court's order filed August 2, 1991, Coast to Coast submitted to the Court, on August 9, 1991, documents numbered 123 through 395 and a corresponding index. On August 23, 1991, Coast to Coast submitted to the Court additional documents numbered 396 through 472 and an additional index corresponding thereto.

each category. The document numbers of the documents included in each category are listed in separate footnotes to this memorandum.

### 1. *Charts and Map*

■ The first category of documents consists of one map and a number of charts, all of which were created by or for Coast to Coast's outside general counsel, Berliner.[4] Coast to Coast has withheld all of these documents claiming attorney-client privilege and immunity under the work product doctrine.

The data underlying the charts relates to the number of members of each resort that is affiliated with Coast to Coast, the percentage of these members who live greater than and less than 250 miles from the resort, the number of nights the resort hosted visiting members of other licensed resorts and the number of nights the members of each resort visited other resorts. This data is apparently collected from the resorts themselves and from receipts Coast to Coast receives when members visit other resorts.

It is unlikely that the data contained in the charts, which is collected from third parties, is confidential information concerning Coast to Coast. *See Coastal States Gas Corp.*, 617 F.2d at 863; *Carey–Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 248 & n. 15 (D.D.C.1986) ("a high percentage of the communications passing to or from [in-house] counsel fall outside the privilege because they report or comment on information coming from persons outside the corporation or from public documents, or are summaries of conferences held with or in the presence of others") (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 360 (D.Mass.1950)). The Court of Appeals for this Circuit has held that the attorney-client privilege attaches to communications from an attorney to a client only if the attorney's communication would reveal confidential client information. *Mead Data Central, Inc.*, 566 F.2d at 253–54; *Coastal States*

*Gas Corp.*, 617 F.2d at 863; *Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir. 1983). Under this standard, the charts are not privileged because they contain no confidential information concerning Coast to Coast; the information contained in the charts is collected from the resorts and members of the resorts.

Each of the Court of Appeals' decisions on this issue, however, arose in the context of the Freedom of Information Act (FOIA). In each case the government had refused to produce documents that were requested under the FOIA; and, in each case the documents were withheld under Exemption 5 of the FOIA on the ground of attorney-client privilege. It is unclear, therefore, whether the same standard of confidentiality applies to claims of attorney-client privilege in the context of civil discovery. *See Mead Data Central, Inc.*, 566 F.2d at 254 n. 28 (noting the court's holding reflects the "need to reconcile one of the enumerated [FOIA] exemptions enacted to protect important interests in confidentiality with the overall congressional intent of ensuring comprehensive public access to government records").

In *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377 (D.D.C.1978), the court reviewed *Mead Data* and decisions from other circuits and concluded that for purposes of discovery in civil litigation, "a *client communication* is privileged if it was made with the *intention of confidentiality*." *Id.* at 388 (emphasis added). The court also held that "an *attorney* communication is privileged if it would directly or indirectly reveal *confidential communications* by the client and if it was *considered confidential by the client*." *Id.* (emphasis added). The court went on to explain that "it is not necessary that the *information* be confidential.... information the attorney learned from a client would be privileged if it was learned in a confidential client communication." *Id.* at 389 (emphasis in original). The court's holding rested on the rationale that few communications

---

4. The documents referred to in this section of the opinion are: CCC 393 PO 00077—CCC 393 PO 00102; CCC 393 PRIV 001; 002; 005; 012; 013; 024; 025; 026; 027; 028; 029; 030; 042; 072; 073; 106; 107; 116; 122; 351–352; 353; 354–362; 396; 397–422; 423; 424.

between attorneys and clients would be protected if the attorney-client privilege did not attach to communications containing information known others; consequently, clients would be less inclined to communicate openly with attorneys and the purpose of the privilege would be subverted. *Id.* at 390.

Thus, under the more permissive standard of confidentiality adopted in *Ampicillin Antitrust Litigation*, the charts and map produced by or under the direction of Berliner satisfy the confidentiality requirement only if the documents were based upon confidential communications from Coast to Coast. 81 F.R.D. at 388. Some of the documents that were produced by Berliner are labelled confidential, or attorney-client privilege or attorney work product. Otherwise, Coast to Coast has made *no showing of confidentiality with respect to communications from Coast to Coast to Berliner,* such as the CACI report. Therefore, even under the *Ampicillin* standard of confidentiality, Coast to Coast has not satisfied its burden of showing that the communications from Coast to Coast to Berliner were confidential. *See In re Sealed Case,* 737 F.2d at 99; *Gulf & Western Indus.,* 518 F.Supp. at 682; *United States v. Western Elec. Co.,* 132 F.R.D. 1, 3 (D.D.C.1990) (stating "a conclusory assertion that an element [of the privilege] is present will be insufficient").

Moreover, Coast to Coast has not made a sufficient showing that these charts were created by or under the supervision of Berliner in the course of rendering legal advice rather than business advice. The only showing that these charts were created in order for Berliner to render legal advice is Berliner's affidavit stating simply that he was "rendering legal advice," and Coast to Coast's bare assertion that he was "acting

as a lawyer" in "opining on the legality" of the Primary Product Rule. Conclusory statements asserting the elements of the privilege, however, are not sufficient to establish the privilege. *United States v. Western Elec. Co.,* 132 F.R.D. 1, 3 (D.D.C.1990). In addition, none of these documents contains legal advice. Furthermore, Coast to Coast has not offered any explanation or example of any legal advice rendered by Berliner. On the contrary, Berliner expressly noted in one document addressing the proposed rule that he had conducted no legal research concerning alternative formulations of the rule suggested by him. Document Number CCC 393 PRIV 008. It appears that Berliner was performing services that could have been as easily performed by any businessman.[5] Consequently, Coast to Coast has not made a sufficient showing that Berliner was providing legal advice. *See Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 548 (D.D.C.1970); *Coleman v. American Broadcasting Cos.,* 106 F.R.D. 201, 205–06 (D.D.C.1985).

■ Finally, even if the charts provided to Berliner would be otherwise privileged, the privilege was waived by disclosure of the 1989 CACI report[6] to Western Trails. The 1989 CACI report was prepared for Coast to Coast "at the direction of and under the supervision of Mr. Berliner for the purpose of assisting him in rendering legal advice to [Coast to Coast]." Opposition of Defendant to Plaintiff's Supplemental Memorandum at 5. An inadvertent disclosure of the confidential communication from the client to the attorney is a waiver of the privilege. *In re Sealed Case,* 877 F.2d at 980. Therefore, the privilege is waived with respect to the 1989 CACI report.

---

**5.** It is possible the Berliner was performing legal services for Coast to Coast in formulating the Primary Product Rule to satisfy some sort of contractual obligations that may be owed to the affiliated resorts, such as a duty to promulgate rules that are reasonable, that are created in good faith and that do not breach any obligation to accept applications for Coast to Coast membership from members of affiliated resorts. Coast to Coast has not raised such arguments,

however, either in its opposition to Western Trails' motion to compel or in the indices corresponding to the documents submitted for *in camera* inspection. The actual documents do not indicate that Berliner performed such analysis of the rule.

**6.** This is document CCC 393 PO 00077–102.

Furthermore, the privilege is waived with respect to all other communications concerning the data contained in the CACI report, including the 1990 CACI report[7] and the charts and map prepared by or for Berliner, which apparently were derived from the 1989 CACI report. *Id.* at 980–81 (stating "a waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter") (quoting *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir 1982)); *United States v. Western Elec. Co.*, 132 F.R.D. 1, 3 (D.D.C.1990). The court may retain discretion to impose less than the full scope of waiver "as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it." *In re Sealed Case*, 676 F.2d 793, 809 n. 54. In any event, the Court finds that the scope of the waiver should necessarily extend to the charts, which incorporate the data derived from the 1989 CACI report, and to the 1990 CACI report, which is simply an updated version of the 1989 CACI report.

 Nor are the charts and map protected under the attorney work product doctrine. These documents were prepared in the ordinary course of Coast to Coast's business, *supra;* they were not prepared in anticipation of litigation. *Fann v. Giant Food*, 115 F.R.D. at 596; F.R.Civ.P. 26(b)(3) advisory committee note, *supra.* Although Coast to Coast may have been aware that development of the Primary Product Rule could give rise to claims against Coast to Coast by affected resorts, this alone does not bring the charts and map under the protection of the work product doctrine.

In *Janicker v. George Washington University*, 94 F.R.D. 648 (D.D.C.1982), the plaintiff had sought production of investigative reports, which were prepared by the defendant, concerning the cause of a fire that had occurred in the University's dormitory, whether the University had violated any building regulations and whether the University could prevent a recurrence of such a fire. *Id.* at 649. The defendant contended that these in-house reports were prepared "with an eye towards possible litigation" because the fire raised "obvious liability implications" and, at the time the reports were prepared, investigators representing potential plaintiffs had already appeared at the University. *Id.* Therefore, the University argued, the reports were protected under the work product doctrine. *Id.*

The court observed that "the fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product." *Id.* at 650. Accordingly, the court held that the University's investigative reports were not work product. The court noted that the reports were neither prepared under the direction of counsel nor "after a firm resolve to litigate any civil liability claim which would arise out of the fire." *Id.* at 651.

Although the charts and map were all prepared either by Berliner or under his direction, the documents were prepared in the ordinary course of Coast to Coast's business. The documents were created to implement a Coast to Coast rule regulating the offering of Coast to Coast memberships by licensed resorts. The function served by the documents was not preparation for trial, even though Coast to Coast may have been aware that promulgation of the rule could give rise to some unidentified future litigation with affected resorts. The documents, therefore, are not protected under the work product doctrine. *See Delaney, Migdail & Young*, 826 F.2d at 127.

*2. Communications that Do Not Relate to Legal Advice.*

 The second category of documents consists of various communications between Berliner and Coast to Coast, most of which concern the Primary Product Rule or resorts' requests for exemptions from the rule.[8]

---

7. This is document CCC 393 PRIV 396—422.

8. The documents referred to in this section of the opinion are: CCC 393 PRIV 006–0011; 023;

Assuming that these memoranda were maintained in confidence and were not waived by disclosure, the memoranda do not enjoy protection under the attorney-client privilege or the work product doctrine because they communicate business advice provided in the ordinary course of Coast to Coast's business. *In re Sealed Case*, 737 F.2d at 99, 101; *Gulf & Western Indus.*, 518 F.Supp. at 683. These memoranda do not convey thoughts, mental impressions, opinions, legal theories or strategies that were prepared in anticipation of litigation.

As a general rule, "corporate dealings are not made confidential merely by funnelling them routinely through an attorney." *Jack Winter Inc. v. Koratron Co.*, 54 F.R.D. 44, 47 (N.D.Cal.1971) (holding that documents consisting of "business advice such as that relating to product marketing" were not privileged because these communications do not involve the exercise of the attorney's legal skills). In the present case, Coast to Coast appears to have involved its outside counsel, Berliner, in corporate affairs arising the ordinary course of its business. These documents do not indicate that Berliner provided any legal advice to Coast to Coast respecting the subject matter contained in the documents. To the extent that Berliner was acting in a business capacity, there is no protection for these communications. *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 162–63 (D.Minn.1986) (holding that to the extent that outside counsel of an insurer was acting as a businessman in investigating the insured's claim there was no attorney-client privilege or work product immunity for documents containing the attorney's factual investigation); *see also Puerto Rico v. SS Zoe Colocotroni*, 61 F.R.D. 653, 660 (D.P.R.1974) (in order to find that an attorney was providing legal advice to a client, it must be established that the attorney was applying law to facts or rendering an opinion of law in response to the client's inquiries).

In sum, the documents included in this category are not protected because there has not been any showing either that the documents related to legal advice or that they were prepared in anticipation of litigation.

*3. Drafts of Documents to be Published to Third Parties, Which Do Not Concern Legal Advice of Counsel.*

■ This category of documents includes preliminary drafts of letters to affiliates of Coast of Coast and drafts of other communications to be published to third parties.[9] Each of the documents was either drafted or reviewed by Berliner.

■ If Coast to Coast intended that the information communicated to Berliner would be revealed to third parties by publication of the final drafts of the documents, the preliminary drafts may not be privileged. *See North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 516 (M.D.N.C.1986) ("Preliminary drafts of letters or documents which are to be published to third parties lack confidentiality"). *Contra In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 518 (N.D.Ill.1990) ("Most courts have held that … that simply because a final product is disclosed to the public (or a third party), an underlying privilege attaching to the drafts of the final product is not destroyed"). Communications from a client to an attorney are not presumed to be confidential simply because of the existence of an attorney-client relationship. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984).

■ Further, if at the time the information was submitted to an attorney, the client had decided to publish it to others and had employed an attorney merely to convey the information, the attorney-client privilege does not protect the information

---

031–032; 034–041; 043; 044–045; 105; 108–111; 138; 144; 145–147; 200–200.1; 264–266; 392; 429–430; 437–439; 440–449; 472.

**9.** The documents referred to in this section of the opinion are: CCC 393 PRIV 003–004; 033;

097–104; 112–115; 117–120; 143; 150–152; 153; 154–157; 169–171; 175; 176–177; 178–179; 182–186; 194–199; 209; 211–212; 213–216; 217–219; 307–315; 347; 348–350; 363; 387–388; 393; 425–427; 428; 432–434; 465.

communicated between the client and the attorney. *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir.1984) (discussing the court's earlier opinion rendered in *In re Grand Jury Proceedings*, 727 F.2d 1352). Moreover, if no privilege attaches to the communications, then the document to be published as well as the preliminary drafts and any of the attorney's notes made in preparing the document are not privileged. *United States v. (Under Seal)*, 748 F.2d at 875 n. 7.

On the other hand, if the attorney was employed to research the possibility of publishing client communications, the communications are privileged until such time as "the attorney has been authorized to perform services that demonstrate the client's intent have his communications published." *Id.* at 875–76.

In this case, Berliner did not have authorization to publish the final drafts of the documents to third parties without Coast to Coast's prior approval. Thus, it appears that Coast to Coast intended any communications relating to these documents to be kept confidential. *See Carey–Canada, Inc.*, 118 F.R.D. at 247–48.

However, a study of the documents discloses that none appear to have been drafted or reviewed in connection with providing a legal opinion or for legal assistance in a legal proceeding, but rather for the purpose of providing business advice. Accordingly, these documents are not protected by the attorney-client privilege.

In addition, none of the documents enjoy protection under the work product doctrine, since none were prepared in anticipation of litigation or in the course of trial preparation. Rather, the documents appear to have been prepared in the ordinary course of Coast to Coast's business. *See Coastal*

*States Gas Corp.*, 617 F.2d at 864; *Fann v. Giant Food*, 115 F.R.D. at 596.

*4. Privileged Communications*

■ This category of documents consists of preliminary drafts of letters to be published to third parties, memoranda exchanged between Coast to Coast and its counsel and communications between Berliner and Bruce Erickson of the law firm of Pillsbury, Madison & Sutro.[10] These documents are protected under the attorney-client privilege.

It appears that Coast to Coast intended that communications to counsel relating to preliminary drafts of letters to third parties be kept confidential. Coast to Coast retained discretion to refrain from publishing in whole or in part the letters drafted or reviewed by counsel. *See Supra.*

Moreover, all of these documents directly or indirectly reveal confidential attorney-client communications relating to legal advice provided to Coast to Coast.

Consequently, these documents are protected under the attorney-client privilege and may not be discovered.

*5. Documents Prepared in Anticipation of Litigation.*

■ This category consists of documents that were prepared either in anticipation of this litigation[11] or in anticipation of litigation with respect to Lake Sawyer, an affiliated resort in Washington that was in bankruptcy proceedings at the time the documents were created.[12] The Court finds that these documents were created when the event of litigation arising out of disputes regarding the Primary Product Rule and Lake Sawyer was foreseeable enough that the documents were prepared in anticipation of litigation or of settlement. The Court holds, therefore, that the doc-

---

10. The documents referred to in this section of the opinion are: CCC 393 PRIV 014–022; 046–071; 074–096; 123–137; 139–142; 162–168; 172–174; 187–190; 158–161; 201–208; 271–276; 278–282; 283–287; 288–292; 297; 300–301; 316–325; 328–329; 337; 364–366; 367–371; 372; 373; 375; 376; 377; 378; 379–386; 389–391; 394; 395; 431; 435–436; 450–456; 457; 458; 459; 460–462; 463–464; 466; 467; 468; 469; 470; 471.

11. These documents are CCC 393 PRIV 220–222; 223–225; 226–227; 228–231; 232–235; 236–240; 241–244.

12. These documents are CCC 393 PRIV 148–149; 180–181; 191–193; 245; 246–247; 248–251; 252–254; 255–256; 257–259; 293–296; 260–261; 262–263; 267–270; 277; 298–299; 302–303; 304–306; 326; 330–333; 334–336; 338–339; 340–346.

uments are protected under the work product doctrine despite the fact that Western Trails may not have been an adversarial party to such litigation. *Eckert v. Fitzgerald,* 119 F.R.D. 297, 299 (D.D.C.1988); *Carey–Canada, Inc. v. California Union Ins. Co.,* 118 F.R.D. 242, 247 (D.D.C.1986); *see also Cities Serv. Co. v. FTC,* 627 F.Supp. 827, 832 (D.D.C.1984) (any documents that related to "litigation decisions or to possible settlement discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege").