Stephen W. MONTGOMERY,
et al., Plaintiffs,

v.

LEFTWICH, MOORE & DOUGLAS,
et al., Defendants.

Civ. A. No. 93–0329(GK)(PJA).

United States District Court,
District of Columbia.

April 25, 1995.

Chester Alexander Hewes, Jr., Washington, DC, for plaintiffs.

Joseph Francis Cunningham, Alexandria, VA, Natalie Olivia Ludaway, I, Stephen Michael Sacks, Michael Solender, and E. Lawrence Barcella, Jr., Washington, DC, for defendants.

### MEMORANDUM ORDER

ATTRIDGE, United States Magistrate Judge.

Pending before the Court are the plaintiffs' motion to compel the production of documents [110] claimed by the defendants to be exempt from discovery by the attorney-client privilege as well as the plaintiffs' motion to

compel the deposition of defendants Willie Leftwich and Potomac Fathers, Inc. [121].

Regarding the motion to compel the production of documents, all of the requested documents relate to work done by the Tucker, Flyer & Lewis law firm on behalf of the defendants Potomac entities and Willie L. Leftwich. After conducting an *in camera* inspection of the documents, the Court is satisfied that many documents are not privileged, and accordingly directs that these documents be released to the plaintiffs.

### Background

The plaintiffs—Dr. Stephen W. Montgomery, his professional corporation, and his pension trust (hereinafter collectively referred to as "Montgomery")—have brought a civil action alleging, among other counts, fraud and securities violations against Leftwich, Moore & Douglas; Willie L. Leftwich, P.C.; Potomac Surety Insurance Company, Inc.; Potomac Insurance Holding Company, Inc.; Potomac Fathers, Inc., Potomac Surety Insurance Group;[1] and several other defendants.

The crux of Montgomery's complaint is that Leftwich fraudulently induced him, in 1991, to invest $250,000 in an insurance company (which, according to the plaintiff, was at various times referred to as Potomac Fathers, Potomac Group, Potomac Insurance, and Potomac Holdings). The false representations the defendants allegedly made include communicating to Montgomery that Ronald H. Brown, a nationally known figure, had agreed to be the chairman of the entity's board of directors; and that other investors would be contributing amounts of money equal to Montgomery's share. Am.Compl. at 9–12. According to Montgomery, after the insurance company failed to become operational, yet began to incur sizeable rent and legal fees to Leftwich's law firm, Montgomery demanded, on February 11, 1993, the return of his investment. *See* Am.Compl. at 21–22. The defendants deny making the allegedly false statements, deny that plaintiffs invested $250,000, and claim that they have insufficient information to form a belief as to whether Montgomery asked for a return of his investment.

1. Collectively, the "Potomac" companies are re-

## I. Discussion

### A. Motion to Compel Document Production

Federal Rule of Civil Procedure 26(b)(1) provides in pertinent part that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Because the defendants do not deny the materials' relevancy to the pending litigation, the issue for the Court to resolve is whether the documents are exempt from discovery because of the attorney-client privilege.

By promoting full and frank communications between attorneys and their clients, the attorney-client privilege encourages observance of the law and aids in the administration of justice. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990–91, 85 L.Ed.2d 372 (1985) (citations omitted). The privilege should be narrowly construed, however, because it "has the effect of withholding relevant information from the factfinder." *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). For this reason, "evidentiary privileges in litigation are not favored." *See Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979) (footnote omitted). Moreover, the party asserting the privilege has the burden of establishing its applicability. *In Re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984) (citations omitted).

■ Specifically, in order for the privilege to apply,

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal

ferred to as the "Potomac entities".

services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 98–99 (citation omitted).

■ Additionally, communications made by the *attorney to the client* are only "shielded if they rest on confidential information obtained from the client." *Id.* at 99 (citing *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977). Conversely, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Department of State,* 636 F.2d 600, 604 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

Although both sides have strongly argued their respective positions regarding the discoverability of the materials, it is necessary that the Court examine each document according to the guidance of the *In Re Sealed Case.* Without an *in camera* inspection of the documents, the Court cannot be satisfied that a basis for asserting the privilege exists. *Schreiber v. Society For Sav. Bancorp. Inc.,* 11 F.3d 217, 221 (D.C.Cir.1993) (failure to conduct *in camera* inspection was reversible error).

### 1. Documents Privileged

Upon inspection, the Court is satisfied that the following documents fall within the narrow protections of the attorney-client privilege. All of these documents are either confidential disclosures made by Leftwich to his attorney for the purpose of securing legal advice, or communications to Leftwich by his attorney, based on confidential information imparted by Leftwich. None appear to relate to advice sought for the purpose of committing a crime or tort.

Accordingly, the following documents so numbered are deemed privileged and therefore are not discoverable: 2058–59, 2138–39, 2170–71, 2857, 2857A, 2859–864, 2932–935, 2939, 2944–945, 2948–49, 4075, 4090, 4109–116, 4118–135, 4141–43, 4396, 4454, 4513–15, 4531–37, 4541–561, 4564–66, 4569, 4569A, 4570–592, 4598–4622, 4625–668, 4711–781, 4783–4814, 4820–24, 4831–844, 4849–850, 4854–860.

### 2. Documents Not Privileged

The documents enumerated in this section are discoverable for one or more of the following reasons: 1) the attorney-client privilege has been waived in one respect or another; 2) the documents pertain to business advice as opposed to legal advice; and/or 3) the documents pertain to billing matters.

#### a. Waiver

Montgomery argues that the privilege was waived with respect to certain documents which were sent to Carlton Lewis and/or James Rowan. In rebuttal, the defendants claim that Lewis and Rowan "were not only functioning as agents of the Potomac entities at the time the documents were created, they were the persons controlling those entities." Opp. at 6–7.

■ Certainly it is true that the attorney-client privilege of the corporation extends to corporate officers. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Considering that a corporation always acts via its natural-person agents, it should not be surprising that legal advice communicated to the corporation through its officers is privileged.

■ In this case, however, the defendants—other than Leftwich—have made no showing that Tucker, Flyer & Lewis represented them or any of the Potomac entities. To the contrary, several documents produced *in camera* indicate that the law firm represented only Leftwich. In a letter from Stefan F. Tucker, a name partner in the law firm, to Leftwich dated February 22, 1991 (# 3363), Tucker stated:

Reference is made to your letter of February 15, 1991, regarding Potomac Fathers, Inc. As I am certain that you are aware, we would not have taken on the work for that entity but for the fact that you, as our client, were involved. Your explicit instructions were to protect you. While I am willing to bill Potomac Father, Inc. for the work done, I will look to you

for payment if that entity does not pay within 30 days of being billed therefor.

The fact that Tucker provided legal services at Leftwich's request and that he looked to Leftwich for payment of these services indicates that Leftwich, personally, was Tucker's client. This conclusion is substantiated by a later letter from Tucker to Leftwich dated October 8, 1992 (# 4023) which stated: "You are my client, and not Carlton. You have always been my client. Accordingly, when I do work on your behalf (and documents involving Carlton at your direction), I bill you for the same." Taken in context with the other documents, this letter appears to mean that while Tucker did legal work involving the Potomac entities, Tucker's actual client was Leftwich.

Since Tucker, Flyer & Lewis primarily dealt with the creation of the Potomac entities and did not represent them, but rather Leftwich personally, the Court finds the attorney-client privilege was waived with respect to any documents sent to Lewis, Rowan, or other outsiders regarding the Potomac entities. Additionally, the privilege is found to be waived for telephone conference notes where it appeared other Potomac entities investors took part in those conferences.

### b. Business Advice

■ As mentioned above, Leftwich shoulders the burden of proving that his communications with his attorney were made in furtherance of obtaining legal advice, and that his attorney's correspondence to him was based on confidential information he imparted to his attorney. With respect to many of the documents found discoverable, this burden was not met. These documents consist primarily of draft by-laws, promissory notes, security agreements, incorporation documents, partnership documents and tax information.

These documents are business related and do not contain personal legal advice. *See Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4 (D.D.C.1991). Therefore they do not fall under the protection of the attorney-client privilege and are discoverable.

### c. Billing Matters

■ The final major category of non-privileged documents pertains to correspondence regarding Leftwich's legal bills. It is well established that the attorney-client privilege is generally not violated by requiring the disclosure of billing arrangements "because such information ordinarily reveals no confidential professional communication between attorney and client." *In Re Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983). As mentioned earlier, the burden is on the defendants to show that the facts of the case justify invoking the privilege. In the instant case, none of the bills, statements describing services, or reminders reveals any legal advice sought by Leftwich or given by the law firm.

In accordance with the foregoing reasoning, the documents with the following numbers are not protected by the attorney-client privilege and are directed to be turned over to Montgomery, except to the extent where redactions are indicated: 2023, 2173–76, 2188–194, 2535, 2540–41, 2626–27, 2876–2914, 2916–2927, 2931, 2936–36A, 2937, 2942, 2942A (redact bracketed material), 2943, 2947, 2950–93, 3117–3130, 3130A, 3131, 3132 (redact entire paragraph which begins with words "As I have discussed...."), 3133–3213, 3237–3299, 3304–327, 3328, 3332–36, 3338–3341, 3342 (redact bracketed material), 3351–365, 3387–3532, 3537–3583, 3585–3607, 3667, 3667A, 3668–3765, 3773–3941, 4023, 4014–16, 4022, 4031–045, 4055, 4065–4074, 4076–78, 4139–40, 4393–94, 4516–17, 4538–540, 4562, 4707–10, 4815–16.

### 3. Documents Not Relevant

The following documents are not discoverable because they are not relevant, nor reasonably likely to lead to the discovery of evidence relevant to the issues raised in this litigation. These documents instead relate to legal matters personal to Leftwich only: 2529, 2534, 2542–43, 2621, 2623–25, 4623–24.

### B. Motion to Compel Depositions

Montgomery has noted, on more than one occasion, the deposition of Willie Leftwich. The parties differ on why it was not completed during the discovery period. In any event it appears that the documents which the

court has ordered to be provided may be relevant to issues raised in these proceedings and may be useful, as the defendants themselves point out, during the deposition of Leftwich. Accordingly, discovery will be extended until May 15, 1995 solely to allow the taking of the deposition of Willie Leftwich and Potomac Fathers. In order that these depositions be complete without the prospect of a second deposition, the documents required to be disclosed by this order shall be provided to counsel for the plaintiffs on or before May 1, 1995.

## II. Conclusion

Upon consideration of the plaintiffs' motion to compel document production [110] and the motion to compel attendance at a deposition [121], the oppositions, the replies, the supplemental submission, the entire record, the applicable law, and for the foregoing reasons, it is hereby this 25 day of April 1995:

ORDERED that the plaintiffs' motion to compel document production is granted in part and denied in part in accordance with the foregoing instructions, and it is

FURTHER ORDERED that the motion to enlarge discovery and compel attendance at a deposition is granted.