898 So.2d 720 (2004)
Ex parte NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.
(In re Susan Johnson
v.
Daniel Jeffery Evans, a minor, and Jeffery Evans, an individual and the father of minor Daniel Jeffery Evans).
1030824.
Supreme Court of Alabama.
October 1, 2004.
*721 Kori L. Clement and Aaron B. Thomas of Hare, Clement & Duck, P.C., Birmingham, for petitioner.
J. Michael Crouch, Birmingham, for respondents Jeffery Evans and Daniel Jeffery Evans.
Scott A. Powell, Don McKenna, and Sandra Payne Hagood of Hare, Wynn, Newell & Newton, Birmingham, for respondent Susan Johnson.
WOODALL, Justice.
Nationwide Mutual Fire Insurance Company ("Nationwide") petitions for a writ of mandamus directing the Jefferson Circuit *722 Court to vacate its order compelling Nationwide to produce documents subpoenaed by Susan Johnson in her action against Daniel Jeffery Evans and Jeffery Evans, who are insured by Nationwide. We grant the petition in part and issue the writ.
The relevant facts are undisputed. On February 27, 2002, there was a two-vehicle accident in the parking lot of Homewood High School. One vehicle was operated by Daniel Jeffery Evans ("Daniel"), a minor, who was insured by Nationwide. The other vehicle was occupied by Susan Johnson, who was insured by State Farm.
Nationwide learned of the accident on March 21, 2002, and assigned Bryan Myrick, a Nationwide claims adjuster, to investigate the matter. On that same date, Myrick telephoned Jeffery Evans, Nationwide's policyholder and Daniel's father, to ascertain the details of the accident. Only 20 minutes after speaking with Jeffery Evans, Myrick spoke with Vickie Brown, a State Farm adjuster. Brown informed Myrick that Johnson was having knee surgery for injuries allegedly resulting from the accident. Brown also advised Myrick that Johnson's vehicle had sustained only approximately $300 in damage to its rear bumper. According to Myrick, based upon the description he received of the accident, it was obvious to him that Daniel was free from liability and that Johnson's claim would be litigated. Also, according to Myrick, he believed that litigation was going to occur as a result of Johnson's alleged physical injuries, which were accompanied by little damage to her vehicle. On March 25, 2002, Myrick took a recorded statement from Daniel in furtherance of his investigation of Johnson's claim, as well as to document Daniel's account of the accident for use in any future litigation relating to the accident.
On November 14, 2002, Johnson sued Daniel Evans and Jeffery Evans in the Jefferson Circuit Court, seeking damages for injuries allegedly sustained in the February 27, 2002, accident. On January 27, 2004, Johnson caused a subpoena to be issued to Nationwide, seeking to require Nationwide to produce everything that was in its claims file before to the date Nationwide was notified that Johnson had retained counsel.
On February 9, 2004, Nationwide filed a motion to quash the subpoena, stating, in pertinent part:
"2. The subpoena served on Nationwide specifically requests `any and all' documents. Such a request is overly broad and requests information that is privileged and/or otherwise confidential. Moreover, it requests recorded conversations. Clearly, under the insurance policy, the insured is obligated to assist Nationwide in its investigation of the claim and any statements given by the insured are protected by the work product privilege.
"3. Moreover, any assessments by Nationwide as to its opinions or conclusions as to how the incident occurred or its valuation of the claim, were clearly made in anticipation of litigation and are thus not discoverable."
In support of its motion to quash, Nationwide submitted an affidavit from Bryan Myrick. Many of the undisputed facts are drawn from his affidavit.
On February 26, 2004, the trial court denied Nationwide's motion to quash the subpoena and ordered Nationwide to produce the documents identified in the subpoena. On March 1, instead of producing the documents, Nationwide filed its petition for a writ of mandamus.
This Court will review a discovery order by a petition for a writ of mandamus *723 in only four limited circumstances. See Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134 (Ala.2003); Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810 (Ala.2003). One such circumstance is where a privilege, such as the work-product privilege Nationwide asserts here, is disregarded. See Ex parte Norfolk Southern Ry., 897 So.2d 290 (Ala.2004). Thus, mandamus review of the trial court's order compelling Nationwide to produce the subpoenaed documents is appropriate. Our review is pursuant to the following well-established standard:
"A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."
Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998).
In its motion to quash, Nationwide first contended that "any statements given by [its] insured are protected by the work product privilege." A recorded statement taken from a witness by a claims adjuster can be treated as protected work product, assuming the insurer claiming the privilege can show that the statement was taken in anticipation of litigation. See Ex parte Norfolk Southern Ry., 897 So.2d at 295.
Myrick's affidavit identified a single witness interview, namely, that of Daniel, Nationwide's insured driver, taken on March 25, 2002. According to Myrick's undisputed testimony, he interviewed Daniel after concluding that litigation by Johnson against Daniel was likely to occur. His conclusion was based upon information indicating to him that Daniel was free from liability, that Johnson's vehicle had sustained little damage, and that Johnson had allegedly sustained a serious knee injury. It is clear that Nationwide made an adequate showing that the statement of its insured was taken in anticipation of litigation. See Ex parte Norfolk Southern Ry., 897 So.2d at 295, citing as governing authority, Ex parte State Farm Mut. Auto. Ins. Co., 386 So.2d 1133 (Ala.1980)("State Farm I"). As in State Farm I,"[f]rom the nature of the case, ... [Nationwide's adjuster] could have reasonably concluded that its insured would be sued. This was not the type of fender-bender case where a settlement with the insured [by a third party] would likely occur without a lawsuit." 386 So.2d at 1136.
In response to Nationwide's petition, Johnson acknowledges that this Court, in State Farm I,"analyzed the work-product question as hinging on the likelihood that litigation would occur and the reasonableness of the discovery opponent's assumption that litigation would occur under the particular circumstances." Johnson's brief, at 17. Johnson does not question the sufficiency of Nationwide's showing under that standard. Instead, she argues that "Myrick's degree of certainty regarding the likelihood of litigation and his anticipation of eventually handing documents over to counsel are completely irrelevant." Johnson's brief, at 8. This is so, Johnson argues, because an "insurer cannot claim the materials are work product unless it can show that the materials would not have been prepared but for the litigation." Johnson's brief, at 3 (emphasis in original). In support of this latter proposition, Johnson cites Ex parte State Farm Mutual Automobile Insurance Co., 761 So.2d 1000 (Ala.2000)("State Farm II"),[1] which she contends implicitly overruled State Farm *724 I. However, in light of this Court's recent reliance upon State Farm I as controlling authority, it is obvious that that decision was not overruled by State Farm II. See Ex parte Norfolk Southern Ry., 897 So.2d at 295. Therefore, Johnson's argument is without merit.
In its motion to quash, Nationwide also contended that "its opinions or conclusions as to how the incident occurred or its valuation of the claim, were clearly made in anticipation of litigation and are thus not discoverable." "The protection of [the work-product privilege] extends in any event to `the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.' [Ala. R. Civ. P.] 26(b)(3)." Ex parte Cummings, 776 So.2d 771, 774 (Ala.2000)(emphasis added). Therefore, Johnson is not entitled to documents reflecting Nationwide's assessments, opinions, or conclusions.
For the foregoing reasons, we hold that Nationwide has shown that it is clearly entitled to relief insofar as the trial court ordered it to produce the statement of its insured and documents reflecting its assessments, opinions, or conclusions concerning Johnson's claim. Therefore, to that extent, Nationwide's petition for a writ of mandamus is granted, and a writ is issued directing the trial court to vacate its February 26, 2004, order to the extent it required the production of those documents. To the extent the order required the production of other documents, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., AND HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. This case is starkly distinguishable from "State Farm I" (Ex parte State Farm Mutual Automobile Insurance Co., 386 So.2d 1133 (Ala.1980)), which disallowed the discovery, and is analogous to "State Farm II" (Ex parte State Farm Mutual Automobile Insurance Co., 761 So.2d 1000 (Ala.2000)), which required the discovery.
The crucial part of the rationale of State Farm I reads:
"From the nature of the case, a death claim, State Farm's agent could have reasonably concluded that its insured would be sued. This was not the type of fender-bender case where a settlement with the insured would likely occur without a lawsuit."
386 So.2d at 1136 (emphasis added). In the case now before us, the plaintiff Johnson is not asserting "a death claim" like the plaintiff in "State Farm I." In the case now before us, Nationwide agent Bryan Myrick's affidavit describes only "the type of fender-bender case where a settlement with the insured would likely occur without a lawsuit," id. Myrick identifies "a vehicular accident ... in the parking lot of Homewood High School." He states that he learned "that the plaintiff's vehicle had only sustained approximately $300 in damage to its rear bumper" and "that the plaintiff was having knee surgery for injuries allegedly related to the accident." The affidavit does not state that the injury was serious or that the surgery would be expensive. Indeed, for all that appears in Myrick's affidavit, the "knee surgery" was only a couple of stitches to repair each of a couple of minor cuts. The affidavit states no facts whatsoever to substantiate Myrick's *725 conclusions "that Nationwide's insured ... was free from liability and that this claim would be litigated." Rather, these conclusions are sheer self-serving, retrospective legal posturing to claim the work-product privilege.
"The affidavit may not consist of bare conclusory statements, but must be based on facts, Nowell v. Mobile County Health Dept., 501 So.2d 468 (Ala.Civ.App.1986). An additional requirement is that the affidavit contain information that allows more than speculative or conjectural inferences, Thompson v. Lee, 439 So.2d 113 (Ala.1983)." Perry v. Mobile County, 533 So.2d 602, 604 (Ala.1988). Accord Carter v. Cantrell Mach. Co., 662 So.2d 891, 893 (Ala.1995), and B.M. v. Crosby, 581 So.2d 842, 843 (Ala.1991).
State Farm II explains and holds:
"`The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an "in house" report as work product.' Sims[ v. Knollwood Park Hosp.], 511 So.2d [154] at 158 [(Ala.1987)](quoting Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C.1982)). The affidavit does not assert that the requested documents were prepared because of the prospect of litigation against State Farm, nor did State Farm offer any other evidence showing that the requested documents were prepared because of the prospect of litigation against State Farm.

"State Farm's claim of privilege  anticipation of litigation  is based upon the facts that Smith obtained an attorney and that State Farm took the position that Smith planned to be involved in litigation. State Farm did not present any evidence that in May 1997 Smith planned to be involved in litigation with State Farm. Likewise, State Farm did not present any evidence that in May 1997 Smith made a claim for underinsured motorist benefits or informed State Farm that he intended to make a claim for underinsured motorist benefits.
"State Farm has not carried its burden of showing that it prepared the requested documents because of the prospect of litigation against it. Therefore, the trial court properly ordered production...."
761 So.2d at 1003 (emphasis added). Like the affidavit in State Farm II, Myrick's affidavit contains no statement that constitutes evidence that State Farm reasonably anticipated litigation by Johnson or prepared the requested materials because of any such prospect. Therefore, the petitioner Nationwide has not made the showing, prerequisite to mandamus relief, of "a clear legal right in the petitioner to [an] order," Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998), disallowing discovery of the factual material produced by Myrick's investigation before he learned that Johnson had retained counsel.
NOTES
[1] The underlying action in State Farm II, unlike the present case, was an action by an insured against his own insurer seeking underinsured-motorist benefits.